We're back for our last case of today, number 13-2455, United States v. Dwumaah and Ms. Chapman and Mr. Cerruti. Welcome. May it please the court, I'm Julia Chapman with Deckert LLP and I'm Mr. Kwame Dwumaah. I'd like to reserve three minutes for rebuttal. That's granted. In 2005, Mr. Dwumaah's attorney affirmatively misadvised him as... Can you keep your voice up a little? Sure. That's perfect. In 2005, Mr. Dwumaah's attorney affirmatively misadvised him as to the deportation consequences of his guilty plea. Now, the District Court, I thought, made a finding that, the finding is a fact, that he wasn't, your client wasn't affirmatively misadvised. He just wasn't told anything relating to this particular provision in 1927 that says that you, if you lie about citizenship or that that's a reason for you to be removed. Is that correct? Your Honor, the District Court did make factual findings that Mr. Dwumaah had been misadvised. Specifically, the court found that he had been advised that it was a mere possibility that he would be deported, when in fact it was a virtual certainty. And the District Court also found that what makes this case compelling is that he affirmatively sought to negotiate a plea that would avoid deportation, yet failed to recognize the virtual certainty of deportation. So the affirmative advice at issue in this case, which the District Court recognized, was that he had been told that his plea would not automatically result in deportation, when in fact it did. Now, let's go back to the beginning. Mr. Albom was collaborating with or consulting with Mr. Sachs on immigration matters. Was that correct? That's correct, Your Honor. And so what they were trying to do was to get what initially? Something that was not an aggravated felony? That was Mr. Abrahams and Mr. Sachs' original goal. Their goal was generally to avoid pleading to a crime that would itself result in deportation. Their negotiations were focused on avoiding pleading to an aggregated felony or a crime that could be considered a crime of moral turpitude. It may be that they didn't know that falsely claiming U.S. citizenship, I said 1927, or 1227, can result in your being removed. That's correct, Your Honor. Mr. Albom testified that he did not. He was not aware of that provision. Parenthetically, we denied the petition for review in 2010. Has he been removed or is he still in this country? Mr. Duoma has not been removed. He is still currently appealing the removal order. To whom is he appealing it? The Board of Immigration Appeals in Virginia. So he's asking for what from the board at this point? He's asking the board to reverse his deportation order, and that appeal is pending. By virtue of a type of waiver of what? Mr. Duoma is basing his appeal arguing that the facts on which the removal is based are incorrect, and we are not representing Mr. Duoma in his appeal. I have this question for you. You're seeking a writ of quorum nobis, which is unusual. If you took a writ of habeas corpus and the petitioner showed that the counsel was deficient and prejudiced them, the district court is compelled to grant the writ. Is a writ of quorum nobis like that, that we're compelled to grant it, or do we have any discretion in granting it? The court does have discretion as to grant the writ of quorum nobis, Your Honor. That's what I thought. Now, if we have discretion, there's this old statement in equity. If you want to do equity, if you want equity, you have to do equity. Now, you're asking us in your relief here in the brief that we should reinstate the order vacating the conviction. That means the case is still pending, the criminal case. That's correct, Your Honor. So now, the criminal case could then be retried. Not retried. It never was tried, right? That's correct, Your Honor. Okay. Now, if the court tried the case, you made a plea agreement here and the plea agreement provided for the dismissal of some very serious charges. Would you consent then to the reinstatement of those charges because you're taking from the government what the government gave up and now you're repudiating the plea agreement? So wouldn't it be right then to reinstate the other cases, the other accounts? That's correct, Your Honor. We would argue that it would be appropriate to go back to the beginning in this case. Right now, I say that because there's a case that says that the United States v. Midgley, that the case, that those counts would be barred by the statute of limitations. But on the other hand, the willing then to have us reinstate the, not to plead guilty to them, but to reinstate the original accounts. Yes, Your Honor. Judge Greenberg mentioned the word waiver. It's a familiar word this morning. I think we've used it a number of times. Is it your argument before us that Mr. Duwamish's ineffective assistance of counsel claim is grounded on pre-Padilla law? It is, Your Honor. It's different and contradictory to his argument before the district court that his ineffectiveness claim was based on Padilla itself. Why shouldn't we find that the pre-Padilla case law claim has been waived? You're arguing that before us for the first time, and essentially you're saying that Padilla is irrelevant, correct? That's correct, Your Honor. We are arguing that Mr. Duwamish could have made his claim prior to Padilla. But Mr. Duwamish had throughout... But that isn't quite my question. My question is you never raised this before the district court. You're here for the first time claiming pre-Padilla case law. If you look at these several motions for habeas corpus and quorum nobis that Mr. Duwamish had filed since his 2006 removal order, those petitions specifically make out claims for relief under Strickland and under pre-Padilla law. In his 2006 petition for habeas corpus, he specifically said that he was tricked by his court-appointed attorney that because of his immigration status, he should plead guilty to a lesser crime. In that petition, while Mr. Duwamish wasn't citing any case law, he is making out a Strickland claim, specifically that his was prejudiced by it. And again, in 2007, Mr. Duwamish, in his pro se petition for quorum nobis, said that his attorney did not advise him about his not guilty plea, but gave him wrong information that led him to plead guilty. Again, Mr. Duwamish did not rely on any case law specifically, but was making out a Strickland claim. And even in his later petitions that did cite to Padilla, Mr. Duwamish was relying on the existing rule under Strickland that affirmative misadvice as to deportation consequences could itself constitute ineffective assistance of counsel. And you can see that in his April 23rd 2010 petition, where he said his counsel misinformed him that if he pled guilty, he would not be deported, and that he relied on that. And similarly, on September 6, 2011, Mr. Duwamish said that he was misinformed by his attorney that if he pled guilty, he would not be deported. But the two things, one is factual findings, the court found that Mr. Duwamish was not credible on some of these assertions. Isn't that true? The district court found that Mr. Duwamish was not credible in his single assertion that he thought that under no circumstances would he be deported. But the district court did find Mr. Duwamish to be credible in his assertion that he relied on his attorney's advice that let's assume you're right on everything you just mentioned in terms of the first prong of Strickland, but let's get to the second prong, which is prejudice. You don't need a conviction, do you, for falsely claiming citizenship in order to be removable under 1227? Your Honor, you do not necessarily need a conviction, but in this case the court relied on the existence of a conviction. The IJ found that the plea did not necessarily establish that Mr. Duwamish had falsely claimed citizenship. The immigration judge did not rely on the fact of the theft of government monies to determine that he falsely claimed U.S. citizenship. He looked at financial forms, financial aid forms and other evidence, his testimony at the immigration hearing and other things, but not the conviction. And that conviction further supported, I think you heard, was further supported by the IJ's finding. That's correct, Your Honor. And apart from the deportation proceedings to remove Mr. Duwamish, the existence of a conviction has continuing effects on his immigration status, specifically his ability... But my point is, how was he prejudiced? Let's assume that you're correct for the moment, but how was he prejudiced if it turns out you don't need a conviction to remove somebody for falsely claiming citizenship? Your Honor, Mr. Duwamish would continue to be prejudiced because the existence of the conviction has continuing impact on his immigration status, specifically his ability to re-enter the country, were he deported absent the conviction. We're here on the denial of a writ of error, Quorum Novus, and granted there's discretion, but it is an extraordinary remedy, rarely granted. In my 14 years, I've never seen it granted, to be honest with you. We have a case where you can't even speculate when it would be granted. I kind of return to my pre-Padilla law for the I wanted to ask you this question. Does your client know that you were going to stipulate that the original counts that were dismissed as part of the plea agreement could be reinstated? I say that because, you know, you're representing somebody that doesn't mind making accusations against an attorney. You're correct, Your Honor, and I think it's important for me to note that I'm not representing Mr. Duwamish on the criminal counts against him, and I should not. No, but I said if we granted the writ, would you consent to the reinstatement of the counts that were dismissed as part of the plea agreement? And you said yes. Okay. My only question was, does your client know? Because frankly, I anticipated myself, it shows you how you shouldn't anticipate, that you might say, gee, I better take that up with my counsel. And I just wondered, do you know that your client, does your client know that you were going to consent to that if it was asked? No, Your Honor, and I should point out that it was improper for me to consent to that. I should consult with my client. Yeah, I don't want to see you have a grief out of this. Thank you, Your Honor. I see that the light is red. Thank you. We'll get Mr. Cerruti up and then get you back on rebuttal. May it please the Court, Stephen Cerruti on behalf of the United States. The United States' overarching position in this case is simply largely in agreement with what Mr. Drouin argued in the petition for quorum nobis that's at issue below, which is that this case is identical or exactly to the same to that raised in Padilla. As a result, Padilla applies, not pre-Padilla law, and under Chaydez, then, Padilla does not have retroactive effect to cases such as his that became final prior to the Padilla decision. And to the extent that opposing counsel is now mentioned affirmative misadvice? When it provides any details whatsoever about affirmative misadvice or anything about misadvice, it has to do with the potential for loss of his nursing license, not deportation consequences. Only once Padilla and Araccio are decided does he make out his claim that he was affirmatively misadvised about the immigration consequences. And at the Well, Chaydez has said that Padilla does not have retroactive effect, and his conviction became final four years before Padilla, so it wouldn't apply to him. Padilla was an affirmative misadvice case, wasn't it? Yes, it was. Padilla alleged both that he was not told certain things and that he was misadvised. And it was non-retroactive by virtue of Chaydez. Correct. And the government believes that's the end of the story. Now they've raised the argument that no, this case arises, or his argument now arises, under pre-Padilla law, standard Strickland application to ineffective assistance of counsel. However, they've cited to no cases that find that what prevailing norms at the time were unreasonable. He consulted with an immigration attorney. But he didn't know about a fundamental statute, though. Apparently that's what he says. He said that he was not an immigration lawyer. He doesn't know about immigration law. But he was consulting with one. But he was consulting with one. But he entered the plea, counsel says, that his client entered the plea because he thought it would enhance his position in terms of being removed. But he actually pleaded right in to practically a mandatory removal. I mean, even laying aside, let's assume that the Supreme Court ruled that no thing about removal when you enter a plea. No law requires it. It's not Strickland. It's not anything. You just don't have that obligation to do it. Okay. So the question comes up, if I enter this plea to this account, will I be removed? And the answer comes back, well, you have an excellent chance of not being removed. Whereas, in fact, you're almost sure of being removed. Now, even assuming that the lawyer had no obligation on his own initiative to get into the question of removal, if, in fact, he gets into it in response to his client, couldn't that be a Strickland case? He gives him the wrong advice? I don't think that the key is giving him the wrong advice. The key is the manner in which he does that. What you've described is basically the Kwan case. And the Kwan case was a defense counsel who had a client who said, I'm worried about my removal consequences. And the attorney says, you don't need to worry about the removal consequences when, in fact, he did need to worry about the removal consequences. This is pre-pedia. This is before the standard is that you have to inform. Was that a Strickland situation? It was. But the reason that it was a Strickland situation, according to the law, it was because he had failed to keep up with the law, had taken the duty upon himself to advise his client, and the Kwan decision specifically said he would have been better advised to go and talk to immigration counsel, which is exactly what attorney Abom did here. When you look at prevailing norms prior to pedia in 2006, when you look at the standard of reasonable conduct for a criminal defense attorney at that time, you will not find a single case, at least I couldn't find a single case, and I believe you probably won't either, that finds that an attorney who recognizes that he doesn't know enough about immigration law to advise his client goes to his client's own chosen immigration counsel who is representing him before the immigration courts, works hand in hand with that immigration counsel, and that immigration counsel goes so far as to say about the final plea agreement, I couldn't have done things better myself. It just seems impossible to say that he didn't live up to the obligations that existed on him pre-pedia. But the immigration counsel also did not know of the law. Is that what you're telling me? That would appear to be the case. He apparently overlooked it, so then are we going to take his potential ineffectiveness of immigration counsel and apply that to attorney Abom, and are we going to do that then, going to begin to do that in other cases if you're relying on perhaps a fingerprint expert who gives a defense attorney improper advice as to the value or the probativeness of a particular fingerprint that's lifted. There is no obligation, there has never been an obligation prior to pedia that a defense counsel either vet immigration counsel that was chosen by his client, or double check the work of immigration counsel. None of the cases cited by opposing counsel has held that. None of the cases discussed by the Supreme Court in Shidez or pedia has held that. And so what you are looking at, if that is what the standard that defense counsel is going to be held to, that is a new obligation. That is not something that reasonable jurists would think was required, and so it's a new rule. So you're saying his representation of her was not deficient, even though he testified that he didn't know the law, because he relied on somebody who's supposedly an expert in the field. Well, pedia and Shidez affirmatively understand that defense counsel will not necessarily know about immigration law. In cases, even cases as I said, like Kwan, that were, that are relied upon by opposing counsel, say that the right thing for defense counsel to do, the effective thing for defense counsel to do, is to consult with immigration counsel, and that's exactly what Attorney Abom did here. So even if you don't hold, even if you say that pedia is retroactive, or even if you look at and say that there is a Strickland standard that would apply in these cases pre-pedia, the bottom line is there is no effect, ineffectiveness here under Strickland or pre-pedia law. The Seventh Circuit decided in January, Chiari versus United States. Determining that a petitioner could not assert under pre-pedia law an ineffective assistance claim based on affirmatively erroneous immigration advice. Are you familiar with that case? Unfortunately, I'm not. I apologize. One of the things the parties dispute is we have a case called United States v. Nino from 1989. And it appears to be disputed whether it would require Duwamish to show that but for the ineffective assistance, he would not have pled guilty. And Nino says, adds, and would have been acquitted. It looks like that one could argue that that last part is no longer needed. Are you still arguing that it is needed? That Nino is good law pre-pedia, pre-pedia, I guess. Well, this court recognized in Araccio that the Nino line of cases that existed pre-pedia did have that requirement. And unlike opposing counsel, which characterizes this as being contradictory to- But isn't Nino really in real significant tension with Hilby Lockhart? Didn't we disavow Nino? Yes, but we threw it out. We threw it out. In Araccio. In Araccio. In Araccio. Based on intervening law in, in pedia, which doesn't have retroactive effect under Chavez. And Araccio, in actually characterizing the Nino standard, characterized it as being an interpretation of the Hill standard. So, contrary to being necessarily opposed to the Hill standard- That was being very, very polite. But since Araccio was abrogated, my question is, don't we have to restate something? I think you can go back to the Nino standard if there is then intervening law. Speaking only for myself, I have no desire to go back to the Nino standard. I'll look at Lockhart. Well, then I suppose I have to appeal to the other two judges to potentially win this point on this appeal, but- No, you know, you have rid of Eric Corum. Nope, it's- Well, there is that. Well, that's something you could- But your argument basically is pretty simple. Your argument is that for Strickland purposes, we look at the counsel who was representing the petitioner here in the criminal case. And that counselor could not have been deficient, because even though that counselor was given erroneous advice, the deficiency was by somebody who wasn't representing that person in the criminal case, and therefore, counsel was not deficient. Exactly. Nothing more. And you can't impute to the trial counsel the deficiency of the independent counsel, the independent immigration counsel. That would certainly be our position. You know, there's something funny about it, though. You know, the guy gets up and he testifies. He practically admits the malpractice. He says, I didn't know about this statute. You know, I mean, that's a pretty blunt admission. It's a blunt admission, however, you know, the cases don't require defense counsel to be particularly versed in immigration law. Understanding that immigration law and having practiced in immigration law for a short amount of time, it's Byzantine. It's very difficult to understand sometimes. We would penalize someone for being candid, for saying he didn't know, and reward those who say that- And he did the right thing. He went to immigration counsel and tried to work hand-in-hand with immigration counsel to do best by his client. But it also seems as if there's a carve out here. Because normally, the first prong of Strickland is, did counsel perform below what is expected of counsel in that situation? And whether you take Mr. Abom or Mr. Abom slash Mr. Sacks together, one can make a good argument in the ordinary setting that they perform below what would be anticipated of somebody in the immigration area, certainly with respect to Sacks. And Sacks is part of the equation. And yet here in the immigration area, courts are saying, well, did somebody, I guess as a result of Padilla, say specifically that make an affirmative statement that if you plead guilty, you will not be deported, or if you plead guilty, you will not be conditioned, that results in removability. And maybe it's the next case, but it seems like you're requiring more of counsel in this area than you normally do in a Strickland situation. I think to a certain extent, I think it probably would be the next case, because when we're applying it here, if you're going to start requiring more of defense counsel in an immigration setting, that would unquestionably be a new obligation and a new rule, and therefore it could not be considered old Strickland law, and you would have to rely on the retroactivity of Padilla. Old Strickland law would also go into whether, maybe preliminarily go into the question of prejudice. Correct. So we could talk about the merits forward and back, but at the end of the day, where would the prejudice be here? I mean, that's the Achilles' toe I think the other side has, is there, you don't need a conviction for falsely claiming citizenship to result in removable, the person being removable. Correct. I have no further questions. I just had this question. If, and you probably, I found out in the last case, or the one before, I forgot which one it was now, that they couldn't make an argument unless it was clear to remain justice, do you know if we remanded the matter on, if we set aside the conviction on the basis of the court granting the writ of Oronovas, would, and we said, but it's conditioned on reinstating the original complaint in its entire, the original indictment, would you retry them? Or you probably couldn't answer that. I can't answer that. That's going to be up to trial counsel, the US attorney, probably going to have to consult with main justice because they consult with them for everything. And. It's above your play, pay grade. Yes, it is. Thank you very much. No, thank you. You did a good job. Ms. Chapman. Thank you. I just want to touch on two things, your honor. Sure, go right ahead. First, I want to highlight that Padilla's ruling encompassed two rules relating to non-citizen defendants and guilty pleas. The first rule was restating the long-standing rule that an attorney who provides affirmative misadvice to a non-citizen defendant as to the deportation consequences of a guilty plea can provide ineffective assistance of counsel. And the second rule was that an attorney's failure to advise, and itself, give rise to an ineffective assistance of counsel claim under the Sixth Amendment. And it was only that second rule that the court in Chavez was examining when it found that Padilla did not apply retroactively. Let's assume for the moment that what you have to do, or you, if we were to vacate the, what happened here, and grant quorum nobis, which I said it hasn't been done before. How would he possibly beat the claim, or the indictment, that would be made against him? For filing false financial reports, claiming citizenship when there wasn't citizenship, taking public monies, what defenses would he have? Your honor, I'm not sure what defenses Mr. Duomo would have, but I do know that at the time of his negotiations to get to a point where at least his attorney believed at the time he would not be deported. And so at the time they had looked at the indictment and continued with plea negotiations, so presumably that could happen again. So are you impliably saying that in effect the government wouldn't bring into play 1227? I'm not in a position to speculate as to what the government would do, your honor. But I do know that at the time they did negotiate a variety of different plea options. And is it your position that pre-Padilla case law was submitted to the district court on this application petition for a writ of error quorum nobis as the reason for which the writ should be granted? It is my position, your honor, that Mr. Duomo, in his four petitions to the district court, had laid out a Strickland claim in the facts that he presented to the court, which would be a claim under pre-Padilla case law. Admittedly, as a pro se plaintiff, he did not cite any case law. No, I mean, this is the problem. We have to reach to see if the district court even knew that that was the issue that is the only issue on appeal. Your honor, if you examine the district court's analysis, the analysis, though citing Padilla, was conducted entirely under the existing rule of Strickland. It did not require application of Padilla's new rule as to failure to advise. The analysis was entirely about whether the attorney affirmatively misadvised Mr. Duomo and whether he was prejudiced by that. You know, what struck me here was that during these negotiations, and the government knew what he was pleading to, apparently the US attorney did not advise counsel of the mandatory nature of the removal. Because the US attorney knew that he was, that's what they were trying to negotiate for. And he wanted to say, hey, you know, better watch out. In other words, you may be pleading into something that's going to require the removal. But apparently the US attorney didn't tell him. Based on the record, your honor, it does not appear that he did. Maybe they didn't know either. Okay, thank you both counsel for very well presented arguments. Ms. Chapman, I understand this is your first oral argument for a court of appeals? It is, your honor. Well, as they say in South Philly, you've done good. You've done good. We'd like to. And we gave you a little bit of a tough time, too. We got jam-broken. No, she did. But just be careful in giving away your client's rights, believe me. You're correct, your honor, I appreciate the advice. That was a big one. No, no, I want to thank you. I want to, is it Mr. Kotler? Yes, your honor. I want to thank you and the Deckard firm, I don't know who's at counsel table as well, really taking matter pro bono. Very well done, and much, much appreciated by us. Yes, I thought the briefs were excellent in this case. Thank you.